**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| JOHN MONTUE,<br><br>　　　　　　　　Petitioner,<br><br>　vs.<br><br>KEN CLARK,<br><br>　　　　　　　　Respondent. | Civil No.　　08-0470-DMS (POR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.　INTRODUCTION AND PROCEDURAL BACKGROUND**

John Montue ("Montue"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus in the Eastern District of California on March 21, 2008 [doc. no. 1]. On November 25, 2008, the Petition was reassigned to visiting District Judge Dana M. Sabraw for all further proceedings [doc. no. 17] and, on December 18, 2008, the Petition was assigned to visiting Magistrate Judge Louisa S. Porter for all non-dispositive motions and matters and for such dispositive motions and matters as assigned [doc no. 18].

Montue is serving a prison sentence of seven years to life after being convicted by jury of kidnap for the purpose of robbery. (Petition (hereinafter, "Pet.") at ¶¶ 1-4.) Montue's Petition, brought pursuant to 28 U.S.C. § 2254, does not challenge the legality of his conviction or sentence, but instead alleges that he was denied due process in conjunction with a prison

disciplinary hearing. (Memorandum of Points and Authorities accompanying Petition form [doc. no. 1] (hereinafter, "Mem. of P&A") at 1-15, generally.) Montue contends that his due process rights were violated when: (1) the prison disciplinary officer denied Petitioner a witness during the hearing and failed to state his reasons for refusing to allow the witness, (2) the Senior Hearing Officer failed to follow the proper standard of finding him guilty, and (3) his disciplinary hearing was fundamentally unfair. (Mem. of P&A at 1.)

On December 8, 2006, the California Department of Corrections ("CDC") delivered to Montue a copy of a Rules Violation Report ("RVR") pertaining to a December 5, 2006 incident in which Montue was charged with over familiarity with staff. (*See* Mem. of P&A, App. A at RVR, p. 1.)[1] On January 5, 2007, Montue participated in a disciplinary hearing on the charge alleged in the RVR. (*Id*. at RVR, pp. 2-4; *see* Mem. of P&A, App C, p. 1.) The Senior Hearing Officer, Correctional Lieutenant M. Cruz ("SHO"), found Montue guilty of the charge and assessed a 30-day forfeiture of behavioral ("good time") credits and referred him for program review and transfer consideration. (*Id*. at RVR, pp. 2-4.) Montue filed a petition for writ of habeas corpus in the California Supreme Court, raising the same claims raised in this Petition, which the court denied on January 16, 2008 without reasoned decision or citation to authority. (Mem. of P&A, App. F; Pet. at ¶ 11.)

Montue filed the Petition in this case on March 21, 2008. After the reassignments referenced above, Respondent filed an Answer and accompanying Memorandum of Points and Authorities on August 27, 2008 [doc. no.15]. Montue filed a Traverse on September 12, 2008 [doc. no. 16]. The Court has now considered the Petition, Answer, Traverse, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **DENIES** the Petition.

## II.     THE DISCIPLINARY PROCEEDINGS AGAINST MONTUE

On December 5, 2006, while Montue was housed at California Medical Facility, Vacaville, prison secretary Ms. Villarreal completed an RVR containing the following information:

---

[1] Because the pages of Memorandum of Points and Authorities and Appendices to the Petition are not bate-stamped or numbered on the docket, the Court will narratively describe the referenced documents within each Appendix Exhibit, where appropriate.

| | |
|---|---|
| 1 | [¶] On 12-05-06 at approximately 10:00 am, I entered my office and noticed an envelope had been slipped under my door from the night before. I picked up the envelope that was blank having a piece of tape to keep it closed. I opened the envelope finding four bookmarks from the Chapel here at the institution. I told Unit IV Lieutenant Ross what I found. Right away I knew they were from Inmate MONTUE, C-85994, J-125-L; who is a third watch custody clerk. Later that day at around 1300 hours, I was looking in the custody cabinets for some supplies and MONTUE, while sitting at the clerk's desk, MONTUE got my attention by quietly saying my first name. MONTUE had told me he slipped a little something under my door and asked me if I got it. I told him yes and that he knows that he is not suppose [sic] to give me anything so he can't do that. Again at about 1430 hours I was making copies in the Lieutenant's Office alone and the door was open. MONTUE came to the door and asked me if I could make a copy of an out count slip for him. While I was making a copy, MONTUE told me that he didn't mean anything by the things (bookmarks) he gave me and he didn't think there was anything wrong with it because they were from the Chapel. I told him that he is not to give me anything not even a tissue and not to let it happen again. After the conversation MONTUE had left out of Unit IV and I did not see him for the rest of the day. |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | [¶] Inmate MONTUE would often come to my office and ask me questions when no one was around, not even the other porters or clerks. MONTUE would come open my door and try to make conversation. He did this about four times. MONTUE one time asked me what my favorite color was? [sic] I asked him why and he said no reason, I was just curious. I looked at him and told him no. My door did not lock from the inside because it was a bolt lock. Because MONTUE always [sic] coming to my door, I started thinking that he was trying to see if my door was always unlocked. I called the locksmith and put the work order [in]. The next day my lock was changed. I would feel uncomfortable if I saw Inmate MONTUE back on the mainline. I feel my safety is in question should MONTUE be allowed access to the mainline while I'm at work. |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | (*See* RVR at 1-2.) |
| 18 | Montue was given a copy of the RVR on December 8, 2006. (*See* RVR at 1.) Thereafter, |
| 19 | the following additional information was reported: |
| 20 | [¶] I/M Montue (CO5994, W119) came into the Law Library from Willis Unit and [was] placed in Holding Cage #1 on Thursday, 12/21/06 at approximately 1310 PM. I/M Montue signaled (M. McAtee, [Library Technical Assistant]) to come to his holding cage. When I approached him we both exchanged greetings and he proceeded to tell me that where he worked there is a Secretary that works there who wrote him up for giving her religious pamphlets. He stated that because he is an Ordained Minister he felt that he could share this with her so that she could know what he is about. He stated that he DID NOT know he could [not] share with Staff. While telling me this he tried to show me his CDC 115 RVR and I refused to look at it. He said that he felt for some reason the Secretary "is a little paranoid" be[cause] she feels uncomfortable if he returns to the mainline and that is not what he is about. He said this is bad for him and he may be transferred because of this. He asked me to keep him in prayer about this situation. |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | [¶] <u>NOTE:</u> The staff secretary he speaks about is a family member and I do not know if he is aware of this information. I'm concerned that if he does not know now, and he does return to the mainline then later finds out this information that my |
| 28 | |

> safety may be in jeopardy because when he comes to the library he consistently stops by m[y] office in the Law Library to say hello and chat about his beliefs and briefly talk about his prayers.

(*See* Mem. of P&A, App. A at p. 6.) On December 18, 2006, an Investigative Employee ("IE") was assigned to assist Montue prepare for the disciplinary hearing. (RVR at 4.) The IE prepared a Serious Rules Violation Report, including an interview with Correctional Officer ("CO") Duran concerning a conversation he had with Montue about whether he would receive disciplinary action for his conduct. (*See* Mem. of P&A, App. B.) A copy of the Serious Rules Violation Report was given to Montue on December 27, 2006. (*Id.*)

On January 5, 2007, the SHO conducted a hearing on the RVR. (*See, generally,* RVR.) Montue was present at the hearing, and he acknowledged receiving copies of the RVR and the IE Report (Serious Rules Violation Report) more than 24 hours prior to the hearing. (*Id.* at 3.) Montue stated that his health was good and that he was prepared to proceed with the hearing. (*Id.*) At the time of the hearing, Montue pled "not guilty" and stated: "I'm innocent I didn't do anything wrong." (*Id.*) The RVR reflects that Montue requested one witness, CO Erpenbach, to whom Montue directed the following question:

> Q. At the time you presented me with [the] job change did you speak with Mrs. Villarreal about me regarding the bookmarks?
>
> A. "No, she never mentioned the bookmarks."
>
> C/O Erpenbach stated that he signed a job request removing [Montue] from Unit IV and getting him changed from there.

(*Id.*)

Montue was found guilty of a violation of Title 15, California Code of Regulations ("CCR"), § 3005(a) Conduct, for the specific act of "over familiarity" based on the following evidence: (a) Montue's statement that "I'm innocent I didn't do anything wrong;" (b) Ms. Villarreal's statement indicating that Montue quietly called to her by her first name, told her it was him who sent the bookmarks, and attempted to lie his way out of consequences by saying he did not think it was wrong because the bookmarks were from the chapel; (c) the IE Report (Serious Rules Violation Report), including statement of CO Erpenbach; and (d) CO Duran's responses to

Montue's questions, as contained in the IE Report. (RVR at 4.)[2] According to the record, the SHO advised Montue of his right to appeal the findings of the hearing and the methods by which to do so. (*Id.*) The SHO assessed 30 days forfeiture of behavioral (good time) credits against Montue and stated: "[b]ased on MONTUE's manipulative behavior against female staff, using staff as a cover up, and history of the same, it is recommended a transfer be approved in the interest of CMF Employees already having experience with him previously." (RVR at 4-5.)[3] Montue was subsequently transferred. (*See* Mem. of P&A at 4.)

## III. DISCUSSION

### A. Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2008) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2008) (emphasis added).

---

[2] 15 Cal. Code of Reg. § 3005(a) states: "Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, out community or another person."

[3] Montue admits he was previously found guilty of a conduct violation of over familiarity with staff: "[i]n 1993, petitioner had received a CDC-115 for overfamiliarity [sic] when a female jacket worker took a question of his ["can you keep a secret?"] as a personal overture, there petitioner wanted to inform her about a fight concerning two other inmates and he wanted to make sure that his name would be kept a secret, and where the prison found it to be a violation [sic]." (Mem. of P&A at 3.)

//

"[The Antiterrorism and Effective Death Penalty Act ("AEDPA")] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007), quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). To obtain federal habeas relief, Montue must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003). The "objectively unreasonable" standard is not met by a showing of error or of an incorrect application (as opposed to an objectively unreasonable application) of the governing federal law. *Andrade,* 538 U.S. at 75; *Woodford,* 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 694, 699 (2002) ("it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied [the Supreme Court precedent] incorrectly"). As the Supreme Court explained, this standard is different from the "clear error" standard in that "[t]he gloss of clear error fails to give proper deference to state court by conflating error (even clear error) without unreasonableness." *Andrade,* 538 U.S. at 75.

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus

claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* In Montue's case, he did not petition lower state courts, and the California Supreme Court denied his habeas petition without furnishing a basis for its reasoning. (Mem. of P&A at App. F.) Accordingly, this Court conducts an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado*, 223 F.3d at 982; *accord Himes*, 336 F.3d at 853.

**B.     Analysis**

Montue claims that his due process rights were violated when: (1) the SHO denied Petitioner a witness during the hearing and failed to state his reasons for refusing to call the witness, (2) the SHO failed to follow the proper standard of finding him guilty, and (3) his disciplinary hearing was fundamentally unfair. (Mem. of P&A at 1.) An inmate who faces the loss of a state-created liberty interest such as behavioral (good time) credits is not entitled to the full panoply of rights due a defendant in a criminal prosecution, but is entitled to "those minimum procedures appropriate under the Due Process Clause to insure that the state created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 556, 557 (1974). Where inmates have a statutory right to good time credits, the loss of such credits affects a protected liberty interest by "extending the length of imprisonment." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Due process requires that an inmate facing loss of credits receive: (1) written notice of the charges against him at least twenty-four hours before any disciplinary action is taken; (2) a written statement setting forth the basis for the disciplinary action taken against the prisoner; and (3) the opportunity to call witnesses as long as it would not be "unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563-67.

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *United States ex rel Vajtauer v. Commissioner of Immigration*, 273 U.S. [103] at 106 [(1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, **the relevant question is whether there is any evidence in the record that could support the**

**conclusion reached by the disciplinary board**.

*Hill*, 472 U.S. at 455-56 (emphasis added).

Montue received the "minimum procedures appropriate under the Due Process Clause" to insure that the state did not arbitrarily deprive him of good time credits. He received copies of the RVR citing the charge against him and the IE Report (Serious Rules Violation Report) more than 24 hours prior to the disciplinary hearing. (Mem. of P&A, App. A at RVR, p. 1 & App. B at 1.) The RVR indicates that Montue called CO Erpenbach as a witness, but that no other witnesses were requested. (RVR at 4.) Montue received a copy of the expanded RVR (setting forth the basis for the finding of guilt) after the disciplinary hearing was completed. (RVR at 2.)

In Ground One, Montue contends he was denied due process under state and federal law when the SHO denied his request that the reporting employee, Ms. Villarreal, attend his disciplinary hearing. (Mem. of P&A at 6-9.) He cites *Ponte v. Real*, 471 U.S. 491 (1985) in support of his contention that he had a right to have the reporting employee attend the hearing and states:

> [¶] During petitioner's disciplinary hearing he told the Senior Hearing Officer (SHO) that he wanted the reporting employee to attend his hearing to question her (in part) about her statement relating to her safety concern in the RVR. And the SHO, after denying petitioner's request to allow the reporting employee to attend the hearing, stated "we know you have no intent on harming her." But failed [sic] to document his denial on the RVR. . . .

(Mem. of P&A at 7.) Respondent contends that the state court's decision denying Montue's habeas claim should be upheld because there is no record that Montue requested any witness other than CO Erpenbach, and Montue received all the process that was due him under federal law. (Answer at 4-5.) Respondent is correct.

The right to call witnesses at a prison disciplinary hearing is not absolute. "[T]he right to call witnesses [is] a limited one, available to the inmate 'when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Ponte*, 471 U.S. at 499 (quoting *Wolff*, 418 U.S. at 566). "*Wolff* gives prison officials flexibility to keep the hearing within reasonable limits and allows them to refuse to call witnesses when doing so would risk reprisal or undermine authority, or when the evidence would be irrelevant, unnecessary, or hazardous."

1 | *Garcia v. Dexter*, 2009 WL 178755 *6 (C.D.Cal. 2009) (citing *Wolff*, 418 U.S. at 566).

The RVR, which recorded the proceedings of the disciplinary hearing, states that "Subject requested the following witness(es): ERPENBACH, C/O." (RVR at 4.) Montue contends that the SHO denied his request that Ms. Villarreal attend the hearing, stating "we know you have no intent on harming her" (Mem. of P&A at 7) and then failed to record that request, or the reasons for denying the request, on the RVR. Montue asserts that CO S. Tis and C.O. Erpenbach were present and witnessed the denial of Montue's request, but Montue provides no evidence to support this assertion. Without more, Montue's claim amounts to a conclusory allegation that must be rejected by the Court. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (holding that conclusory allegations do not merit habeas relief).

Even *if* the SHO improperly denied Montue's request that Ms. Villarreal appear as a witness at the disciplinary hearing, Montue has not shown that the denial resulted in prejudicial error so as to justify federal habeas relief. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (". . . [H]abeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice'"). Montue does not allege what difference the hearing testimony of Villarreal would have made in the outcome of the hearing. There is no indication from the record or from Montue's papers that Ms. Villarreal would have testified differently than indicated in her statement set forth in the RVR, which was considered by the SHO. Without more, Montue cannot meet his burden. Thus, the state court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly Supreme Court law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Ground One is **DENIED**.

In Ground Two, Montue contends that there was no reliable evidence to support the guilty finding against him. Specifically, Montue asserts that, because there is no specific prohibition against "over familiarity" contained in 15 CCR Section 3005(a), he could not properly be found guilty under that regulation. Additionally, Montue asserts that his transfer was improper because he was not given 72 hours notice prior to being brought before the Institution Classification Committee ("ICC") for the third time, as required by state regulation. (Mem. of P&A at 10-13.)

Respondent contends that the state court's decision denying Montue's habeas claim should be upheld because the finding of guilt was supported by "some evidence." (Answer at 5-6.) Respondent is correct.

Federal courts are bound by a state court's construction of its own penal statutes and regulations and must defer to that interpretation unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993). California's interpretation that "over familiarity" is a prohibition encompassed by the language of 15 CCR Section 3005(a) (". . . refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person") is a reasonable interpretation which is neither untenable nor amounts to a subterfuge of federal law. Accordingly, this Court will not second-guess California's own interpretation of its regulations.[4]

Moreover, there was "some evidence" to support the rules violation, and "some evidence" is all that is required under the Due Process Clause. As set forth in Section II above, the SHO based his guilty finding on the following evidence: (a) Montue's statement that "I'm innocent I didn't do anything wrong;" (b) Ms. Villarreal's statement indicating that Montue quietly called to her by her first name, told her it was him who sent the bookmarks, and attempted to lie his way out of consequences by saying he did not think it was wrong because the bookmarks were from the chapel; (c) the IE Report (Serious Rules Violation Report), including statement of CO Erpenbach; and (d) CO Duran's responses to Montue's questions, as contained in the IE Report. (RVR at 4.) This evidence is plainly sufficient to support the guilty finding against Montue.

Montue further contends that his transfer, which resulted from the guilty finding, was improper because he received insufficient notice (less than 72 hours) to appear before the ICC on that issue. The RVR reflects that Montue was specifically advised of his appeal rights after he was found guilty of the charge of over familiarity. (RVR at 4.) Montue appealed the guilty finding and

---

[4]While the RVR does not reflect this, the response to Montue's Second Level appeal indicates that he was also guilty of a violation of the rule contained in 15 CCR Section 3010, which states in part, "[i]nmates . . . may not give any person a gift or promise of one, except . . . as specifically authorized by the warden or superintendent. Institution procedures established under this section should be directed toward control of property, safety of persons and institution security." (*See* Mem. of P&A, App. C at 2.)

received responses at both the Second Level and Director's Level of review. (Mem. of P&A, Apps. C & D.) It appears from the record provided by Montue that he pursued a second line of appeal, contending that the subsequent proceedings that led to his transfer violated his due process rights because he received less than 72 hours notice before being required to appear before the ICC. (*See* Mem. of Ps & A, Apps. G-K & M.) That appeal was denied at the Second Level of Review (*id*. at App. K), and was ultimately denied by the Inmate Appeals Branch of the CDC based on its late submission in violation of the time requirements of 15 CCR § 3084.6(c) ("An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision"). (*Id*. at App. M.)

There is no Supreme Court law mandating specific procedures regarding the transfer of state prisoners. Accordingly, Montue cannot show that the state court's denial of his habeas petition was contrary to such law. *See* 28 U.S.C. § 2254(d). Moreover, there is no indication in the record before the Court that any error was made. (*See* Mem. of P&A, App. K.) As discussed above, the guilty finding on the rules violation was supported by "some evidence" in the record, and Montue was afforded the federal due process protections required in the context of a prison rules violation proceeding. *Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454. Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Ground Two is **DENIED**.

In Ground Three, Montue contends that the finding of guilt must be set aside because his disciplinary hearing was fundamentally unfair. (Mem. of P&A at 14-15.) Montue is mistaken. As discussed above, the guilty finding on the rules violation was supported by "some evidence" in the record, and Montue was afforded the federal due process protections required in the context of a prison rules violation proceeding. *Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454. This Court is bound by a standard that requires only "some evidence" to uphold the administrative decision. *Hill*, 472 U.S. at 455. Even evidence that may seem meager will satisfy this standard because a prisoner's liberty interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings 'take place in a closed , tightly controlled environment peopled by those

who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.'" *Id.* at 457, 454, citing *Wolff*, 418 U.S. at 561. Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Ground Three is **DENIED**.

## V. CONCLUSION

For all the foregoing reasons, the Petition is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: April 27, 2009

_____
HON. DANA M. SABRAW
United States District Judge